UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

MOHAMED ALHAMEDI,

                  **Plaintiff,**

                - against -

U.S. ATTORNEY GENERAL ALBERTO GONZALES;
DEPARTMENT OF HOMELAND SECURITY
SECRETARY MICHAEL CHERTOFF; U.S.
CITIZENSHIP AND IMMIGRATION SERVICE;
U.S.C.I.S. DIRECT EMILIO T. GONZALEZ;
U.S.C.I.S. NEW YORK DISTRICT DIRECTOR
MARY ANN GANTER; FEDERAL BUREAU OF
INVESTIGATION DIRECTOR ROBERT S.
MUELLER; and THE UNITED STATES OF
AMERICA,

                **Defendants.**
─────────────────────────────────────────

07 Civ. 2541 (JGK)

OPINION AND ORDER

JOHN G. KOELTL, District Judge:

In this case, the plaintiff Mohamed Alhamedi, whose application for naturalization has remained unsettled for more than fourteen months after he claims the U.S. Customs and Immigration Services ("the CIS") conducted its "examination" as required by 8 U.S.C. § 1446, seeks judicial intervention pursuant to 8 U.S.C. § 1447(b) to adjudicate his naturalization application, or, in the alternative, to remand to the CIS with a specific deadline by which it should make a determination regarding his case. Alhamedi brought this action along with an order to show cause seeking a preliminary injunction and summary judgment in his favor. After holding an initial hearing on the order to show cause, the court requested further briefing, and

1

the defendants now cross-move to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which the Court may grant relief.  The Court heard argument on the pending motions on May 17, 2007.

There is no dispute as to the following facts.  The plaintiff, Mohamed Alhamedi, a native of Yemen, became a permanent resident alien on November 6, 1997 and resides in the Bronx.  (Aff. of Mohamed Alhamedi ¶ 2, Mar. 15, 2007.)  He filed an Application for Naturalization, also known as an "N-400" application, on November 30, 2005.  (Id. ¶ 3 & Ex. 6.)  The CIS interviewed Alhamedi in connection with his application on March 28, 2006; he passed the required English language and United States history and government tests; and he received a notice from the CIS indicating that the "INS [sic] will send you a written decision about your application."  (Exs. 1, 9 to Alhamedi Aff.)  Alhamedi alleges that the interviewing officer, Michael Morochnick, informed him that an FBI name check would need to be conducted, but that he would recommend approval provided Alhamedi cleared the name check.  (Alhamedi Aff. ¶ 4.)

Alhamedi asserts that under 8 U.S.C. § 1447(b),[1] if the CIS

has not made a determination as to whether his application

should be granted or denied within 120 days of the date of his

examination, he is permitted to file suit in the district court

for the district in which he resides seeking a hearing, and the

court then takes jurisdiction over the matter and may either

adjudicate his application for naturalization or remand with

appropriate instructions to the CIS.  The 120th day came and went

on July 26, 2006 with no determination from the CIS, and even

now, over fourteen months later, Alhamedi still awaits word on

his status.  He did not sit on his hands in the interim, but

rather made an inquiry requesting expedition directly to the

FBI, made a Freedom of Information-Privacy Acts request

regarding FBI records pertaining to him (in response to which

"no records responsive to [his] request" were found), and sought

the assistance of his Congressman.  (See Exs. 2 & 3 to Alhamedi

Aff.)  After all of these efforts failed to impel the FBI to

complete his name check, Alhamedi filed the present action on

---

[1]  Section 1447(b) provides:
    If there is a failure to make a determination under section 1446
    of this title before the end of the 120-day period after the date
    on which the examination is conducted under such section, the
    applicant may apply to the United States district court for the
    district in which the applicant resides for a hearing on the
    matter.  Such court has jurisdiction over the matter and may
    either determine the matter or remand the matter, with
    appropriate instructions, to the [CIS] to determine the matter.

March 27, 2007 when he feared that further inaction could result
in severe consequences for himself and his family.

One of Alhamedi's daughters, Arwa, will reach her twenty-
first birthday on August 26, 2007; at that point she will "age
out" of her immediate relative status such that the plaintiff,
unless he is a citizen, will be unable to petition to adjust her
status to allow her to remain in the United States as the
immediate relative of a citizen.  (Alhamedi Aff. ¶ 7; Compl.
¶ 19.)  Alhamedi fears that further delay in adjudicating his
application for naturalization will thus deprive him of the
ability to transmit his nationality to his daughter and to allow
her to remain in the United States.  (Compl. ¶ 19.)  Arwa would
lose the ability to complete her education at Hunter College and
would be required to return to Yemen, a country to which she has
no connection.  (Compl. ¶ 19; Alhamedi Aff. ¶¶ 8-14 & Exs. 5,
7.)  In addition, Alhamedi has applied for a position as an
employee of the New York City Department of Corrections, passing
the required written exam on October 21, 2006, and he claims he
relied on the 120-day time frame for a naturalization
determination set out in 8 U.S.C. § 1447(b) in seeking a
position open only to U.S. citizens.  (Alhamedi Aff. ¶ 17 & Ex.
9.)

The defendants submitted a Declaration by the Section Chief
of the National Name Check Program Section of the FBI, Michael

Cannon, that provides background on the increased workload the

FBI has faced since the events of September 11, 2001 and in

particular its backlog of name check requests caused by the

resubmission of many requests by the Immigration and

Naturalization Service ("INS").[2]  (See Decl. of Michael A. Cannon

¶¶ 1, 16-19, Apr. 23, 2007.)  In addition to the larger annual

number of requests for background checks it now faces, since

November 2002 the FBI has used a deeper, more detailed clearance

procedure under which it searches not only its "main" files, but

also a broader compilation of records through its "reference"

files.  (Id. ¶¶ 6-12.)  Cannon asserts that the name check

request for Alhamedi was received from the CIS "on or about

December 21, 2005, and has not been completed. . . . The results

of the name check will be forwarded to [the CIS] in Washington,

D.C. in due course, in accordance with the FBI's normal

protocol."  (Id. ¶ 22.)  Cannon declares that "[t]he FBI cannot

provide a specific or general time frame for completing any

particular name check submitted by [the CIS]," although he

refers to the possibility of "expedited" and "priority" checks

for reasons such as "military call-ups, medical emergencies,

---

[2]  The INS ceased to exist as an agency within the Department of Justice on March 1, 2003 and its responsibility for processing applications for naturalized citizenship were assumed by the CIS, which is part of the Department of Homeland Security.  See Homeland Security Act of 2002, Pub. L. No. 107-296, § 471(a), 116 Stat. 2135, 2205; see also Chan v. Gantner, 464 F.3d 289, 290 (2d Cir. 2006).

'age-outs,' or immigration 'lottery' winners." (Id. ¶ 20.)  The

defendants provide no description of the priority afforded to

Alhamedi's application, or of any steps that have been taken to

expedite his name check in response to his repeated inquiries or

the filing of the present Complaint.  There is no indication in

the record that any FBI search has to date been conducted for

Alhamedi or that any positive "Hits" have been returned.  (See

id. ¶¶ 12, 20.)

In response to Alhamedi's request for timely relief, the

defendants rely primarily on a strained argument that the Court

lacks subject matter jurisdiction pursuant to 8 U.S.C. § 1447(b)

because the "examination" referred to in that section consists

not only of the "one-time event" Alhamedi underwent during his

interview on March 28, 2006, but rather of a full investigation

of the applicant, including the mandatory FBI name check.  The

defendants cite a handful of district court decisions outside

this circuit that have accepted that argument.  See Danilov v.

Aguirre, 370 F. Supp. 2d 441, 444 (E.D. Va. 2005); see also

Martinez v. Gonzales, 463 F. Supp. 2d 569, 571 (E.D. Va. 2006)

(following Danilov); El Kassemi v. Dep't of Homeland Sec., No.

06-1010, 2006 WL 2938819, at *2 (D.N.J. Oct. 13, 2006) (same);

Damra v. Chertoff, 05 Civ. 929, 2006 WL 1786246, at *2 (N.D.

Ohio June 23, 2006) (same).  These isolated decisions, however,

are contrary to the overwhelming majority of court decisions

that have rejected the defendants' argument and exercised

jurisdiction in cases similar to this one.  The Court of Appeals

for the Ninth Circuit, sitting en banc, examined the statutory

text of § 1447(b), its statutory context, and the legislative

purpose in enacting the Immigration Act of 1990, Pub. L. No.

101-649, 104 Stat. 4978, which introduced the current

administrative regime for adjudicating naturalization

applications, and concluded that where the INS had not acted

within 120 days of two applicants' initial interviews, upon the

applicants' filing suit the district court took exclusive

jurisdiction over their naturalization applications.  United

States v. Hovsepian, 359 F.3d 1144, 1159-1164 (9th Cir. 2004)

(en banc); accord Zaranska v. U.S. Dep't of Homeland Sec., 400

F. Supp. 2d 500, 502-04 (E.D.N.Y. 2005) (adopting magistrate's

report and recommendation).  Similarly, many district courts

have found jurisdiction where, as here, an applicant received no

determination within 120 days of the applicant's interview

because the CIS awaited the FBI's background check; a sampling

of those decisions is set out in the margin.[3]  The Court agrees

---

[3]   Manzoor v. Chertoff, 472 F. Supp. 2d 801, 804-08 & n.3 (E.D. Va. 2007)
(rejecting Danilov's reasoning and noting "in each of these cases [in the
Danilov line], the naturalization applicant failed to file a response to the
defendants' motion to dismiss for lack of subject matter jurisdiction"); see
also Lin v. Sec'y, U.S. Dep't of Homeland Sec., No. 07-MC-6012L, 2007 WL
1231482, at *2 (W.D.N.Y. Apr. 24, 2007); Mahd v. Chertoff, 06 Civ. 1023, 2007
WL 891867, at *2 (D. Colo. Mar. 22, 2007); Kherriden v. Chertoff, Civ. No.
06-4792, 2007 WL 674707, at *2-*5 (D.N.J. Feb. 28, 2007); Hussein v.
Gonzales, 474 F. Supp. 2d 1265, 1267-68 (M.D. Fla. 2007); Aslam v. Gonzales,
No. C06-614MJP, 2006 WL 3749905, at *1 (W.D. Wash. Dec. 19, 2006); Shalabi v.

with the reasoning of Hovsepian, and with the vast majority of

courts that have examined the issue, and finds it has

jurisdiction pursuant to § 1447(b).

The defendants next contend that even if the Court finds

jurisdiction, it should dismiss the Complaint for failure to

state a claim upon which relief can be granted.  They argue that

the Court cannot adjudicate Alhamedi's application because it

would contravene Congress's intent to make a determination

without completing the required background investigation and

because the judiciary is ill-suited to assume the task of

investigating the applicant's background itself.[4]  While the

---

Gonzales, 06 Civ. 866, 2006 WL 3032413, at *3-*4 (E.D. Mo. Oct. 23, 2006);
Eng v. Chertoff, Civ. No. H-06-1302, 2006 WL 2442894, at *1 (S.D. Tex. Aug.
21, 2006); Khan v. Chertoff, No. CV-05-560-PHX-SRB, 2006 WL 2009055, at *1-*2
(D. Ariz. July 14, 2006); Khelifa v. Chertoff, 433 F. Supp. 2d 836, 840-42
(E.D. Mich. 2006); Meyersiek v. U.S. CIS, No. CA 05-398 ML, 2006 WL 1582397,
at *2-*3 (D.R.I. June 6, 2006); Daami v. Gonzales, Civ. No. 05-3667, 2006 WL
1457862, at *3-*6 (D.N.J. May 22, 2006); Al-Kudsi v. Gonzales, No. CV 05-
1584-PK, 2006 WL 752556, at *1-*2 (D. Or. Mar. 22, 2006); Shalan v. Chertoff,
Civ. No. 05-10980-RMZ, 2006 WL 42143, at *1-*2 (D. Mass. Jan. 6, 2006); Essa
v. U.S. CIS, No. CIV051449, 2005 WL 3440827, at *2 n.2 (D. Minn. Dec. 14,
2005); El-Daour v. Chertoff, 417 F. Supp. 2d 679, 680-83 (W.D. Pa. 2005);
Castracani v. Chertoff, 377 F. Supp. 2d 71, 73-75 (D.D.C. 2005).

   [4]  A "personal investigation" of an applicant is required under 8 U.S.C.
§ 1446(a), and through an appropriations act Congress has indicated that a
full background check by the FBI is now required.  See Appropriations Act of
1998, Pub. L. No. 105-119, 111 Stat. 2440, 2448-49 (1997) ("Provided further,
That, during fiscal year 1998 and each fiscal year thereafter, none of the
funds appropriated or otherwise made available to the Immigration and
Naturalization Service shall be used to complete adjudication of an
application for naturalization unless the Immigration and Naturalization
Service has received confirmation from the Federal Bureau of Investigation
that a full criminal background check has been completed . . . .").  It
should also be noted that the CIS now requires that the FBI background check
be completed prior to the examination of the applicant:  "The Service will
notify applicants for naturalization to appear before a Service officer for
initial examination on the naturalization application only after the Service
has received a definitive response from the Federal Bureau of Investigation

plain language of § 1447(b) provides that the Court may "determine the matter," nearly every court confronting this question has agreed with the defendants that it would be inappropriate to adjudicate a naturalization application in the absence of a completed FBI background check.  See, e.g., Kherriden, 2007 WL 674707 at *5; Essa, 2005 WL 3440827 at *2; El Daour, 417 F. Supp. 2d at 683-84.  But see Shalan, 2006 WL 42143 at *2 (denying motion to dismiss or remand where "defendants offer no reasons specific to plaintiff for the extensive time expended in completing review of his application").  The Court agrees, without deciding whether under some set of facts it could adjudicate such a matter, that it would be inappropriate to do so here without the results of the FBI name check.  That conclusion, however, does not require dismissal of the Complaint.  Section 1447(b) provides an alternative form of relief in that the Court may "remand the matter, with appropriate instructions, to the [CIS] to determine the matter."

The defendants argue that even a remand directing the CIS to adjudicate Alhamedi's application immediately is unavailable because the CIS's hands are tied by Congress; it cannot act until the FBI completes its name check, and it has no power to force the FBI to expedite Alhamedi's case.  See Alkenani v.

_____

that a full criminal background check of an applicant has been completed."  8 C.F.R. § 335.2(b).

Burrows, 356 F. Supp. 2d 652, 657 (N.D. Tex. 2005) ("Nor does

the immigration service have authority to expedite the FBI

investigation or give petitioner priority over background checks

requested by other agencies.").  However, many courts have found

it appropriate to remand with instructions, and there is no

discernible reason why the same relief should not be afforded

here, especially in light of the lengthy delay and the

defendants' failure to explain why Alhamedi's name check cannot

be expedited.  See, e.g., Mahd, 2007 WL 891867 at *3 (remanding

with instruction that the FBI complete the background check

within 45 days and the CIS act within 45 days of receiving the

FBI's report); Kherriden, 2007 WL 674707 at *5 (remanding with

direction that the CIS use its "best efforts" to expedite the

name check and requiring the Government to report the status

every 30 days); Ahmed v. Chertoff, Civ. No. H-06-MC-0417, 2006

WL 3771814, at *1 (S.D. Tex. Dec. 15, 2006) (instructing the FBI

to complete the background check in 120 days); Mohamed v.

Frazier, Civ. No. 06-377, 2006 WL 1424619, at *1 (D. Minn. May

18, 2006) (remanding to the CIS with instructions to resolve the

application within 30 days); Alhassan, 06 Civ. 1571-REB-MJW,

2007 WL 1455841, at *1 (D. Colo. May 16, 2007) (noting that

court had remanded with orders that the FBI complete the name

check within 60 days and that the CIS adjudicate the application

within 60 days thereafter; the CIS approved the application

eight days later).

The Court is aware of the significant administrative burden

heightened security concerns have placed on agencies such as the

FBI.  (See Cannon Decl. ¶¶ 16-19.)  However, the CIS could have

avoided the present problem by following its own regulations and

postponing its "examination" of Alhamedi until the FBI had

cleared his name, but that path was not taken.  See 8 C.F.R.

§ 335.2(b).  Moreover, the Government acknowledges that the FBI

follows various priorities including expedition for applicants

who are about to "age out."  Because there has been no effort to

explain why Alhamedi's case was not expedited, because it

appears that the pending name check is the only bar to

Alhamedi's naturalization, and because he and his family face

unnecessarily dire consequences should no action be taken before

his daughter Arwa turns twenty-one, the Court **remands this case**

**for immediate resolution by the CIS, with the following**

**instructions**:

> **1.    The FBI should expedite and complete Alhamedi's**
> **name check and report the results to the CIS within 30 days**
> **of this Order.**
>
> **2.    Upon receiving this response from the FBI, the**
> **CIS should make a determination on Alhamedi's application**
> **and, in the event he is eligible for naturalization, allow**
> **sufficient time for him to be sworn in as a citizen, within**
> **30 days of receipt of the FBI response.**

Should the defendants fail to comply with these instructions, the plaintiff may petition this Court to reopen the matter and to seek appropriate relief.

## CONCLUSION

For the reasons explained above, the case is **remanded** to the CIS.  The FBI should complete Alhamedi's name check and report its results to the CIS within 30 days.  Upon receiving the FBI's name check result, the CIS should determine Alhamedi's eligibility for naturalization and, in the event he is eligible, provide for him to be sworn in within 30 days of its receipt of the FBI's name check result.

SO ORDERED.

Dated:      New York, New York
            May 2€, 2007

                                    John G. Koeltl
                              United States District Judge

12